STATE OF NORTH CAROLINA v. EURSTON IVAN SNEED

No. 722SC217

(Filed 24 May 1972)

1. Criminal Law §§ 66, 175— identification testimony — voir dire — hearsay — presumption
   It will be presumed that the trial judge disregarded incompetent hearsay testimony given during a *voir dire* hearing to determine the admissibility of the in-court identification of defendant.

2. Criminal Law § 66— pre-trial identification — in-court identification — independent origin
   There was competent, clear and convincing evidence on *voir dire* to support the trial court's findings that the in-court identifications of defendant by a robbery victim and another witness were each of independent origin, based on what they observed during and immediately after the robbery, and did not result from any out-of-court confrontation or from any pre-trial procedure suggestive and conducive to mistaken identification.

3. Criminal Law § 71— shorthand statement of fact
   Testimony by a witness who pursued and caught defendant after a robbery, "He was trying to get in a house. When he saw me, he turned around and ran through the yard," *held* competent as a shorthand statement of what he observed as he pursued defendant.

APPEAL by defendant from *Peel, Judge,* 1 November 1971 Session of Superior Court held in BEAUFORT County.

The defendant, Eurston Ivan Sneed, was charged in a bill of indictment, proper in form, with common law robbery. Upon the defendant's plea of not guilty, the State offered evidence tending to show the following: On 11 October 1971 at

State v. Sneed

approximately 3:30 p.m., Brenda Joyce Boyd was taking a money bag containing $4,401.81 in currency and checks from her place of employment at the Washington Daily News to the North Carolina National Bank in Washington, North Carolina. As Miss Boyd was passing through an alley, the defendant came from behind, knocked her down, grabbed the money bag, and ran.

Hobson Lewis, driving along the street near the alley described by Miss Boyd, heard a woman screaming and saw the defendant running along the street carrying a money bag. Lewis stopped his truck and followed the defendant on foot into the backyard of a house where he saw the defendant crouching in some bushes. When Lewis shouted at him, the defendant ran and Lewis lost sight of him. Seven or eight minutes later he saw the defendant at the police station where he had gone to leave his name as witness.

Theron Hill, working in a warehouse beside the alley where the robbery occurred, heard the screams of Miss Boyd, saw her standing at the edge of the alley and saw the defendant running west on Second Street near the Cottage Service Station. After a chase, he and another man caught the defendant. Later, Hill returned to the area and found the money bag in some bushes near a place where he had seen the defendant during the chase.

About 10 minutes after the robbery, while Miss Boyd was at the Police Station with her employer, Ashley Futrell, reporting the robbery, she saw the defendant and told Mr. Futrell that he was the one who had robbed her.

The defendant testified that on 11 October 1971 after 3:00 p.m., he was walking along Van Norden Street in Washington, North Carolina, when he saw a man approaching with whom he had had some difficulty and who had reportedly said, "He was looking for me." The defendant ran from the man toward Third Street and up Gladden Street and while he was walking along Gladden Street, he was caught and held by Mr. Hill and another man.

Edward Frazier, a witness for the defendant, testified he heard a woman screaming and saw Hill and another man chasing someone other than the defendant.

The jury found the defendant guilty as charged and from a judgment sentencing the defendant as a committed youthful offender for a maximum period of five years, the defendant appealed.

*Attorney General Robert Morgan and Assistant Attorneys General William W. Melvin and William B. Ray for the State.*

*LeRoy Scott for defendant appellant.*

HEDRICK, Judge.

[1] The defendant first contends the trial court erred in admitting hearsay evidence in the trial of the case. An examination of the exception upon which this assignment of error is based reveals that the testimony complained of occurred on *voir dire* hearing to determine the admissibility of the in-court identification of the defendant. In a hearing before a judge without a jury the ordinary rules as to the competency of evidence which are applicable in a jury trial are to some extent relaxed, but if incompetent evidence is submitted, the presumption arises that it was disregarded and did not influence the judge's findings. 7 Strong, N. C. Index 2d, Trial § 57. This assignment of error has no merit.

[2] The defendant next contends the Court erred by finding and concluding "that the defendant's constitutional rights were not violated and that the in-court identification was made through and by the out of court identification." The fourteen exceptions upon which this assignment of error is based relate to the findings and conclusions of the trial judge made after a *voir dire* hearing to determine the admissibility of the testimony of Brenda Joyce Boyd and Hobson Lewis identifying the defendant as the perpetrator of the crime charged in the bill of indictment. When the defendant challenged the testimony of Boyd and Lewis, the able trial judge followed precisely the procedure set out by Chief Justice Bobbitt in *State v. Moore* and *State v. Accor*, 277 N.C. 65, 175 S.E. 2d 583 (1970) by having a *voir dire* hearing in the absence of the jury, where, after hearing the testimony of seven witnesses, including Boyd, Lewis, and the defendant, the Court made detailed findings of fact as to the out of court confrontation between the witnesses and the defendant, and as to what the witnesses observed

State v. Sneed

during and immediately after the robbery. There was competent, clear, and convincing evidence to support the Court's positive findings that the in-court identification of the defendant Sneed by the witnesses Boyd and Lewis was each of independent origin, based solely on what they observed during and immediately after the robbery, and did not result from any out of court confrontation or from any pre-trial identification procedure suggestive and conducive to mistaken identification. Such findings when supported by competent evidence are conclusive on appellate courts, both State and Federal. *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652 (1971) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970). This assignment of error is overruled.

[3] The defendant contends that the Court erred in denying his motion to strike a portion of the testimony of the witness Theron Hill. The testimony complained of was: "He was trying to get in a house. When he saw me, he turned around and ran back through the yard." This testimony came while the witness Hill, who was working in a building next to the alley where the robbery occurred, was describing how he, after hearing the screams of the witness Boyd, pursued and caught the defendant. In his brief defendant asserts: "This certainly appears to be a conclusion on the part of the witness. The witness could not assert with certainty whether the defendant saw him or not and he could only guess that he saw him and he could only speculate that he ran back through the yard because he did see him."

Although the testimony complained of may be in the nature of a conclusion, it is competent as a shorthand statement of what the witness observed as he pursued the defendant. *State v. Bailey,* 4 N.C. App. 407, 167 S.E. 2d 24 (1969) ; *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21 (1966).

We have reviewed the record and find there was sufficient competent evidence to require the submission of the case to the jury.

The defendant had a fair trial free from prejudicial error.

No error.

Judges BRITT and PARKER concur.